Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 328-0262
*srandall@randallslaw.com*

John P. Kristensen (*pro hac vice* pending)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
*john@kristensenlaw.com*

***Lead Attorneys In Charge for Plaintiffs***

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Cati French, an individual; Ivoryonna L. Dean-Davis, an individual; and Alexia Chavez, an individual, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>Whitefeather Holdings, LLC; Whitefeather Ventures, LLC; and Corey Owens, an individual,<br><br>                Defendants. | Case No.:<br><br>**COLLECTIVE ACTION**<br><br>**COMPLAINT FOR DAMAGES**<br>1.  **Failure to Pay Minimum Wage, 29 U.S.C. § 206;**<br>2.  **Failure to Pay Overtime Wages, 29 U.S.C. § 207;**<br>3.  **Unlawful Taking of Tips, 29 U.S.C. § 203;**<br>4.  **Illegal Kickbacks, 29 C.F.R. § 531.35;**<br>5.  **Forced Tip Sharing, 29 C.F.R. § 531.35;**<br>6.  **Violation of the Arizona Minimum Wage Act ARSA § 23-363(A),(C);**<br>7.  **Violation of the Arizona Minimum Wage Act ARSA § 23-351(C)**<br><br>        **(Jury Trial Demanded)** |

Plaintiffs Cati French, Ivoryonna L. Dean-Davis, and Alexia Chavez

("Plaintiffs"), individually and on behalf of all others similarly situated, allege the

following upon information and belief, based upon investigation of counsel, published

**COLLECTIVE COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**– 1 –**

reports, and personal knowledge:

I.      **NATURE OF THE ACTION**

1.      Plaintiffs allege causes of action against defendants Whitefeather Holdings, LLC dba Venom, a Delaware Limited Liability Company doing business in Arizona and Whitefeather Ventures, LLC dba Venom, a Delaware Limited Liability Company doing business in Arizona ("Defendants" or "Venom"), Corey Owens ("Defendant" or "Owens"), an individual, (collectively, "Defendants") for damages due to Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*, charging illegal kickbacks and illegally absconding with Plaintiffs' tips.

2.      As a result of Defendants' violations, Plaintiffs seek to recover all tips kept by the employer, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA.

3.      These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants in the three (3) years prior to the filing of this Complaint. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent  Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees

1    may be intentionally misclassified as a means to cut costs and
2    avoid compliance with labor laws.[1]

3    As alleged in more detail below, that is exactly what Defendants are, and were at all
4    times relevant, doing.

5    4.    Plaintiffs worked at Defendants' principal place of business located at
6    1104 S. Craycroft Road, Tucson, Arizona 85711.

7    5.    Defendants failed to pay Plaintiffs minimum wages and overtime wages
8    for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

9    6.    Defendants' conduct violates the FLSA, which requires non-exempt
10   employees to be compensated for their overtime work at a rate of one and one-half (1
11   ½) times their regular rate of pay. *See* 29 U.S.C. § 207(a).

12   7.    Furthermore, Defendants' practice of failing to pay tipped employees
13   pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29
14   U.S.C. § 206.

15   8.    Plaintiffs bring a collective action to recover the unpaid overtime
16   compensation and minimum wage owed to them individually and on behalf of all other
17   similarly situated employees, current and former, of Defendants in Arizona. Members
18   of the Collective Action are hereinafter referred to as "FLSA Collective Members."

19   9.    As a result of Defendants' violations, Plaintiffs and the FLSA Collective
20   Members seek to recover double damages for failure to pay minimum wage, overtime
21   liquidated damages, interest, and attorneys' fees.

22   **II.    VENUE AND JURISDICTION**

23   10.    This Court has jurisdiction over the subject matter of this action under 28
24   U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201, *et seq.*

25   11.    Venue is proper in this District because it is the location of the
26   Defendants, including their principal place of business. Further, venue is proper in this

---

[1]    *See* DOL Admin. Interp. No. 2015-1, available at
http://www.dol.gov/whd/workers/Misclassification/AI- 2015_1.pdf.

1  District because all or a substantial portion of the events forming the basis of this action

2  occurred in this District. Defendants' club is located in this District and Plaintiffs

3  worked in this District.

4    12.    Plaintiffs have satisfied all conditions precedent, if any, to the filing of

5  this suit.

6  **III.    PARTIES**

7    13.    Plaintiffs are individual adult residents of the State of Arizona.

8  Furthermore, Plaintiffs were employed by Defendants and qualifies as an "employee"

9  of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Their consents to this

10  action are attached hereto as Exhibits 1, 2, and 3.

11    14.    The FLSA Collective Members are all current and former exotic

12  dancers/entertainers who worked at Venom located at 1104 S. Craycroft Road, Tucson,

13  Arizona 85711 at any time starting three (3) years before this Complaint was filed, up

14  to the present.

15    15.    Whitefeather Holdings, LLC is a foreign (Delaware) for-profit company

16  doing business in Tucson, Arizona.  Upon information and belief, the principal place of

17  business of Defendant Whitefeather Holdings, LLC is 2711 Centerville Road, #400,

18  Wilmington, Delaware 19808. Whitefeather Holdings, LLC is one of the owners of

19  "Venom" in Tucson, Arizona. Whitefeather Holdings, LLC is present in, and either

20  directly or through agents, does substantial business in the State of Arizona.

21  Whitefeather Holdings LLC is an "employer" or "joint employer" within the meaning

22  of the Fair Labor Standards Act. Defendant Whitefeather Holdings, LLC, may be

23  served with process by serving its registered agent, owner, and president, Corey Owens,

24  at 4757 E. Greenway Road #107B, Phoenix, AZ 85032.

25    16.    Defendant Whitefeather Ventures, LLC is a foreign (Delaware) for-profit

26  company doing business in Tucson, Arizona.  The principal place of business of

27  Whitefeather Ventures, LLC is listed with the Arizona Secretary of State as being 2711

28  Centerville Road, #400, Wilmington, Delaware 19808. Whitefeather Ventures, LLC is

one of the owners and operators of "Venom" in Tucson, Arizona. Whitefeather Ventures, LLC is present in, and either directly or through agents, does substantial business in the State of Arizona. Whitefeather Ventures, LLC is an "employer" or "joint employer" within the meaning of the Fair Labor Standards Act. Defendant Whitefeather Ventures, LLC, may be served with process by serving its registered agent, owner, and president, Corey Owens, at 4757 E. Greenway Road #107B, Phoenix, AZ 85032.

17.    Owens was/is the main manager who executed the policies regarding payment to dancers/entertainers and management of dancers/entertainers, including Plaintiffs.

18.    Owens acted directly or indirectly on behalf of Venom, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Venom, including day to day management. He was frequently present at, owned, directed, controlled and managed the operations at Venom. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Collective Members. Owens had at all times relevant to this lawsuit, the authority to hire and fire employees at Venom, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Venom. In particular, he was responsible for determining whether Venom complied with the FLSA.

19.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce their club which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1). Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

20.    At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Venom as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC §§ 206-207.

21.    Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

22.    Plaintiffs are informed and believe, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employer and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

23.    Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each were acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

24.    At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

///

///

IV.    **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

(AGAINST ALL DEFENDANTS)

A.    FACTUAL ALLEGATIONS

25.    Defendants operate an adult-oriented entertainment facility located at 1104 S. Craycroft Road, Tucson, Arizona 85711. At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

26.    At all times during the four (4) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

27.    At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

28.    Plaintiffs began working as dancers for Defendants in the prior three (3) years to the filing of this Complaint.

29.    The primary duty of a dancer/entertainer is to dance and entertain customers, and give them a good experience. Specifically, a dancer/entertainer performs stage and table dances, and entertains customers on an hourly basis.

30.    Stated differently, dancers/entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

31.    Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female dancers/ entertainers.

32.    Defendants did not pay dancers/entertainers on an hourly basis.

33.    Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs work four (4) days a week and tell Plaintiffs what time they were permitted to leave.

34.    Defendants set prices for all VIP performances.

35.    Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

36.    Defendants controlled music for Plaintiffs' performances.

37.    Defendants controlled the means and manner in which Plaintiffs could perform.

38.    Defendants placed Plaintiffs on a schedule.

39.    Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

40.    Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

41.    Although Defendant allowed dancers/entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises. In order to comply with Venom's dress and appearance standards, Plaintiffs typically expended approximately one (1) hour of time each shift getting ready for work without being paid any wages for such time getting ready.

42.    Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishment.

43.    Defendants also required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

44.    Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers/entertainers were never made aware of how the tip credit allowance worked or what the amounts to

be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that they divide their tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

45.    Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures. Defendants had visibly posted in the employees' locker room the written employee rules for late arrivals and early leaves and the corresponding fees for which performers would be responsible.

46.    Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Venom.

47.    Defendants paid for the building used by Venom, maintenance of the facility, the sound system, stages, lights, beverage and inventory used at the facility.

48.    Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

49.    Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Venom.

50.    Nude dancing is an integral part of Venom's operations. Venom's advertising and logo prominently displays nude dancing for its customers. Venom is well known as a "strip club."

51.    Defendants need dancers/entertainers to successfully and profitably operate the Venom business model.

52.    The position of dancer/entertainer requires no managerial skill of others.

53.    The position of dancer/entertainer requires little other skill or education, formal or otherwise.

54.    The only requirements to become an entertainer at Venom are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead were glanced over "up and down" and participated in a brief

audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs have little or no formal dance training and experience before auditioning to dance at Venom.

55.    Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by dancers/entertainers.

56.    Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

57.    Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers for longer than eight (8) hours per shift.

58.    Plaintiffs were not paid an hourly minimum wage for the typical one (1) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards. Plaintiffs estimate that they spent approximately five hundred U.S. Dollars ($500.00) annually on makeup, hair-related expenses, and outfits.

59.    Plaintiffs were not paid an hourly minimum wage for the time they were required to wait at Venom until the premises and the parking lot were cleared of customers.

60.    The FLSA Collective Members had the same pay structure and were under the same controls as Plaintiffs.

61.    Plaintiffs and FLSA Collective Members would work over forty (40) hours in some weeks each worked for Defendants.

62.     Defendants have never paid Plaintiffs and FLSA Collective Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Collective Members to pay them for the privilege of working.

63.     The only source of monies received by Plaintiffs (and the class they seek to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Collective Members were required to pay to Defendants.

64.     Although Plaintiffs and FLSA Collective Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half (1 ½) rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

65.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

66.     Plaintiffs and the FLSA Collective Members who worked at Venom performed precisely the same job duties - dancing and entertaining at Venom.

67.     Plaintiffs and the FLSA Collective Members who worked at Venom during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

68.     Plaintiffs and the FLSA Collective Members at Venom were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

///

69.     Plaintiffs and the FLSA Collective Members at Venom during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

70.     Plaintiffs and the FLSA Collective Members at Venom, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

71.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former dancers and entertainers who worked at Venom during the applicable limitations period would elect to participate in this action if provided notice of same.

72.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Venom during the three (3) to five (5) years prior to the filing of this action.

73.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seek to represent, and will adequately represent the interests of the class.

74.     Plaintiffs have hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

75.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other dancer/entertainer and failed to maintain and furnish wage statements to Plaintiffs.

76.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.   The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.   An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.   The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.   The hours worked each workday and total hours worked each workweek;

f.   The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.   The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.   The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.   The dates, amounts, and nature of the items which make up the total additions and deductions;

j.   The total wages paid each pay period; and

k.   The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

77.   Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Collective Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Collective Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

**B. INDIVIDUAL LIABILITY UNDER THE FAIR LABOR STANDARDS ACT**

78.    In *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009), the U.S. Court of Appeals for the Ninth Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer." *Id.* at 1088. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

79.    Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). The Ninth Circuit highlighted factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

80.    Owens is individually liable for failing to pay Plaintiffs their wages. The actual identities of DOE MANAGERS 1 through 3 and DOES 4 through 10 are unknown at this time.

**V.    COLLECTIVE ACTION ALLEGATIONS**

81.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

82.    Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

///

83.    Plaintiffs have actual knowledge that the FLSA Collective Members have also been denied overtime pay for hours worked over forty (40) hours per workweek and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers at Venom. As such, they have firsthand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' club Venom have shared with them similar pay violation experiences as those described in this Complaint.

84.    Other employees similarly situated to the Plaintiffs work or have worked at Venom but were not paid overtime at the rate of one and one-half (1½) their regular rate when those hours exceeded forty (40) hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

85.    Although Defendants permitted and/or required the FLSA Collective Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

86.    FLSA Collective Members perform or have performed the same or similar work as the Plaintiffs.

87.    FLSA Collective Members regularly work or have worked in excess of forty (40) hours during a workweek.

88.    FLSA Collective Members regularly work or have worked and did not receive minimum wage.

89.    FLSA Collective Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

90.    As such, FLSA Collective Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

91.    Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies

or practices, and does not depend on the personal circumstances of the FLSA Collective Members.

92.     The experiences of the Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Collective Members.

93.     The specific job titles or precise job responsibilities of each FLSA Collective Member does not prevent collective treatment.

94.     All FLSA Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

95.     All FLSA Collective Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

96.     Although the exact number of damages may vary among FLSA Collective Members, the damages for the FLSA Collective Members can be easily calculated by a simple formula. The claims of all FLSA Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Collective Members.

97.     As such, Plaintiffs bring their FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers/entertainers who worked at the Venom located in Tucson, Arizona at any time starting three (3) years before this Complaint was filed.**

///
///
///
///
///

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206

### (By Plaintiffs Individually and on Behalf of the Collective

### Against All Defendants)

98.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

99.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

100.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because their annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

101.    Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

102.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

103.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that their misclassification scheme and compensation policies were illegal.

104.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

///

## SECOND CAUSE OF ACTION

**FAILURE TO PAY OVERTIME WAGES PURSUANT TO THE FLSA, 29 U.S.C. § 207**

**(By Plaintiffs Individually and on Behalf of the Collective**

**Against All Defendants)**

105.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

106.    Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

107.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

108.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because their annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

109.    Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty (40) during each workweek in which they worked in violation of 29 U.S.C. § 207.

110.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.

111.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that their misclassification scheme and compensation policies were unlawful.

112.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action,

1   including interest, pursuant to 29 U.S.C. § 216(b).

2                  **THIRD CAUSE OF ACTION**

3   **UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203**

4        **(By Plaintiffs Individually and on Behalf of the Collective**

5                  **Against All Defendants)**

6       113.   Plaintiffs hereby incorporate by reference and re-allege each and every

7   allegation set forth in each and every preceding paragraph as though fully set forth

8   herein.

9       114.   Plaintiffs customarily and regularly received more than thirty U.S. Dollars

10   ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29

11   U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

12       115.   At all relevant times, each Defendant is an "employer" or joint employer

13   of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

14       116.   Defendants are engaged in "commerce" and/or in the production of

15   "goods" for "commerce" as those terms are defined in the FLSA.

16       117.   Defendants operate an enterprise engaged in commerce within the

17   meaning for the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in

18   commerce, and because their annual gross volume of sales made is more than five

19   hundred thousand U.S. Dollars ($500,000).

20       118.   Under TIPA:

21          [a]n employer may not keep tips received by its employees for
22          any purpose including allowing managers or supervisors to
             keep any portion of employees' tips, regardless of whether or
23          not it takes a tip credit.

24   29 U.S.C. § 203.

25       119.   Defendants kept a portion of tips paid to Plaintiffs by Defendants'

26   customers in the form of fees, fines, mandatory charges and other payments to

27   management, house moms, disc jockeys, and floor men in violation of TIPA.

   ///

28

120.    Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

121.    The contribution the Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or the other dancers; but rather, was imposed upon Plaintiffs and other dancers.

122.    By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

123.    Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

124.    At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

125.    Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

126.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

127.    As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

1

**FOURTH CAUSE OF ACTION**

2

**ILLEGAL KICKBACKS, 29 C.F.R. § 531.35**

3

**(By Plaintiffs Individually and on Behalf of the Collective**

4

**Against All Defendants)**

5

128.    Plaintiffs hereby incorporate by reference and re-allege each and every

6

allegation set forth in each and every preceding paragraph as though fully set forth

7

herein.

8

129.    Defendants required Plaintiffs to pay monetary fees to Defendants and

9

other Venom employees who did not work in positions that are customarily and

10

regularly tipped, in violation of 29 U.S.C. § 203(m).

11

130.    Defendants' requirement that Plaintiffs pay fees to Defendants and other

12

Venom employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

13

131.    Because Defendants violated the "free and clear" requirement of 29

14

C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit

15

provision with respect to Plaintiffs' wages.

16

132.    Because Defendants violated the "free and clear" requirement of 29

17

C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal

18

kickbacks.

19

133.    Plaintiffs are entitled to recover from Defendants all fees that Defendants

20

required Plaintiffs to pay in order to work at Venom, involving but not limited to house

21

fees.

22

**FIFTH CAUSE OF ACTION**

23

**FORCED TIPPING, 29 C.F.R. § 531.35**

24

**(By Plaintiffs Individually and on Behalf of the Collective**

25

**Against All Defendants)**

26

134.    Plaintiffs hereby incorporate by reference and re-allege each and every

27

allegation set forth in each and every preceding paragraph as though fully set forth

28

herein.

135.     Defendants required Plaintiffs to pay monetary fees to other Venom employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

136.     Defendants' requirement that Plaintiffs pay fees to other Venom employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

137.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

138.     Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Venom, involving but not limited to forced tip sharing.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE ARIZONA MINIMUM WAGE ACT

### FAILURE TO PAY MINIMUM WAGE

### (By Plaintiffs Against All Defendants)

139.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

140.     At all relevant times, Plaintiffs were employees under the Arizona Minimum Wage Act, A.R.S. § 23-363 et seq.

141.     At all relevant times, Defendants were Plaintiffs' employer under the Arizona Minimum Wage Act, A.R.S. § 23-363 et seq.

142.     Defendants willfully failed to pay Plaintiffs the applicable minimum wages for all hours worked, as required by the Arizona Minimum Wage Act. A.R.S. § 23-363 et seq. and implementing regulations. In fact, Defendants do not compensate them whatsoever for any hours worked and have violated the tipped-employee compensation provision under Arizona law as described above.

///

1

## SEVENTH CAUSE OF ACTION

2

**VIOLATION OF THE ARIZONA MINIMUM WAGE ACT**

3

**FAILURE TO PAY WAGES DUE**

4

**(By Plaintiffs Against All Defendants)**

5      143.   Plaintiffs hereby incorporate by reference and re-allege each and

6  every allegation set forth in each and every preceding paragraph as though fully

7  set forth herein.

8      144.   Defendants' practice of willfully failing to pay Plaintiffs wages for

9  labor performed violates Arizona Wage Law. ARIZ. REV. STAT. ANN.

10  § 23-351(C).  In fact, Defendants did not compensate Plaintiffs whatsoever for

11  any hours worked.

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1

**PRAYER FOR RELIEF**

2  WHEREFORE, Plaintiffs request of this Court the following relief:

3        1.  For compensatory damages according to proof at trial of at least

4            $100,000 for jurisdictional purposes;

5        2.  For special damages according to proof at trial;

6        3.  For restitution of unpaid monies;

7        4.  For attorneys' fees;

8        5.  For costs of suit incurred herein;

9        6.  For statutory penalties;

10        7.  For civil penalties;

11        8.  For pre-judgment interest;

12        9.  For post-judgement interest;

13        10. For general damages in an amount to be proven at trial;

14        11. For declaratory relief;

15        12. For injunctive relief;

16        13. For an amount equal to wages owed, interest thereon, and an additional

17            amount equal to twice the underpaid wages. A.R.S. § 23-364(G).

18        14.  For an amount equal to the unpaid wages under the Arizona Wage Act

19            and an additional amount equal to three times the underpaid wages.

20            A.R.S. § 23-355(A); and

21        15. For such other and further relief as the tribunal may deem just and

22            proper.

23  Dated: August 14, 2020                       **RANDALL LAW PLLC &**

24                                         **KRISTENSEN LLP**

25                        */s/ Samuel R. Randall*

26                        Samuel R. Randall
                              John P. Kristensen

27                        ***Attorneys for Plaintiffs***

28

**COLLECTIVE COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**– 24 –**

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: August 14, 2020                    **RANDALL LAW PLLC &**
                                          **KRISTENSEN LLP**

                                          */s/ Samuel R. Randall*
                                          Samuel R. Randall
                                          John P. Kristensen

                                          ***Attorneys for Plaintiffs***